JOHN POST, PROSECUTOR-APPELLANT, v. JAMES S. AN-
DERSON, MAYOR AND DIRECTOR OF PUBLIC SAFETY
OF THE VILLAGE OF RIDGEWOOD, AND THE BOARD
OF COMMISSIONERS OF THE VILLAGE OF RIDGE-
WOOD, RESPONDENTS.

Submitted May 26, 1933—Decided September 27, 1933.

For the appellant, *Jerome J. Dunn.*

For the respondents, *Thomas L. Zimmerman, Jr.*

The opinion of the court was delivered by

TRENCHARD, J.   The appellant, John Post (hereinafter
called defendant), was a member of the police department of
the village of Ridgewood and was dismissed therefrom by
James S. Anderson, the mayor and director of public safety
of the village, after due notice, hearing and conviction upon
a charge of conduct unbecoming an officer, in violation of
the police manual, in that he did have intercourse with a
named girl, causing her to become pregnant.

The defendant applied to the Supreme Court for a writ of
*certiorari* to review such conviction and that court denied

the application. From that decision the defendant appeals. But an appeal will not lie to review the decision of the Supreme Court refusing to allow a writ of *certiorari*, such allowance not being a matter of right, but resting in the discretion of the court. *State* v. *Wood*, 23 *N. J. L.* 560; *Daniel B. Frazier Co.* v. *Long Beach,* 110 *Id.* 221. The appeal must therefore be dismissed.

Since the right of appeal was not raised or discussed by either counsel, it may not be amiss for us now to point out that the action of the Supreme Court was quite justified.

The Supreme Court rightly considered that the director of public safety was empowered by statute to try the charge. The amendment of section 4 of the Walsh act (*Pamph. L.* 1915, *p.* 494) takes from the board of commissioners jurisdiction to try charges against a police officer and vests such jurisdiction in the director of public safety. *Foley* v. *Orange,* 91 *N. J. L.* 554.

At the trial there was admitted in evidence the dying declaration of the girl in question to the effect that the defendant "got her in a family way." The Supreme Court held that such evidence was inadmissible. We find it unnecessary in this proceeding to determine that question, because, as we find as the Supreme Court found, that there was other evidence amply sufficient to justify the conviction. The Supreme Court further rightly held that the admission of illegal evidence in cases tried by a special tribunal, such as a director of public safety, as here, will not invalidate the finding and conviction, so long as it appears that there was competent evidence before the tribunal to support such finding and conviction. *Crane* v. *Jersey City,* 90 *N. J. L.* 109. That here there was such competent evidence does not admit of doubt.

The sister of the girl testified, without objection, that on November 6th, 1931, the defendant brought the girl to her sister's home in Lebanon, Pennsylvania, at twelve o'clock at night, and told her the girl was very ill and asked whether he could put her on the couch; that the girl was indeed very ill and was put to bed; that the defendant remained there until five o'clock the next morning; that meanwhile the girl was

delivered of a baby with nobody present except the members of the family and the defendant; that before defendant departed he was shown the baby; that soon thereafter the girl was removed to the Good Samaritan Hospital in Lebanon, where she died on November 10th, 1931. The defendant testified in his own behalf that he was a member of the police force of Ridgewood, New Jersey, was a married man, that the girl in question had lived there in the village, where she was employed, for a year and a half prior to November, 1931, and that he had been "going with her" steadily during that period; that late in October, 1931, the girl had threatened to make charges against him and "she seemed quite peeved because he wanted to go back to his wife, and that she said she would make it hot for him;" that the girl wanted him "to keep going with her" and he went out with her occasionally, two or three times a week; that he did not know that she was pregnant until after she had made a bastardy charge against him in the District Criminal Court; that he took her in an automobile to Lebanon, Pennsylvania, on November 6th, 1931, after she had brought a bastardy charge against him and that he did it merely because he had promised to take her on a vacation and that he had no resentment against her for bringing a bastardy charge against him. In answer to a question of whether the bastardy charge had been withdrawn because the girl had got rid of the baby at his instance, he answered, "I don't think so," and that it had never occurred to him to talk about the baby after the bastardy charge had been brought against him. He stated that when he took her to Pennsylvania she did not tell him what was the matter with her. He testified that he told her sister that "she had taken some pills." Again he stated that the cause of her death was that an operation had been performed on her and that he did not know of anybody she was going with at that time. He stated further that he did not think the girl was pregnant when he took her to her sister's house. He further testified that he visited the girl at the hospital after she had been taken there. He denied having had sexual intercourse with the girl.

Of course, the only rational inference to be drawn from all this admittedly competent testimony was that the defendant did have intercourse with the girl causing her to become pregnant, as charged.

The appeal will be dismissed.

*For dismissal*—THE CHIEF JUSTICE, TRENCHARD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 13.